# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### EVANSVILLE DIVISION

MICHAEL NISENSHAL, On Behalf of )
Himself and All Others Similarly Situated, )
                               )
           Plaintiff, )    Case No. 3:18-cv-121
                               )
       v. )    **CLASS ACTION COMPLAINT**
                               )    **FOR VIOLATION OF THE**
VECTREN CORPORATION, CARL L. )    **FEDERAL SECURITIES LAWS**
CHAPMAN, DERRICK BURKS, JAMES H. )
DEGRAFFENREIDT, JR., JOHN D. )    **JURY TRIAL DEMANDED**
ENGELBRECHT, ANTON H. GEORGE, )
ROBERT G. JONES, PATRICK K. MULLEN, )
R. DANIEL SADLIER, MICHAEL L. SMITH, )
TERESA J. TANNER, and JEAN L. )
WOJTOWICZ, )
                               )
          Defendants. )

Plaintiff Michael Nisenshal ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Vectren Corporation ("Vectren" or the "Company") against Vectren and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction pursuant to which Vectren will be acquired by CenterPoint Energy, Inc. ("CenterPoint") through its wholly owned subsidiary, Pacer Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On April 21, 2018, Vectren and CenterPoint issued a joint press release announcing their entry into an Agreement and Plan of Merger (the "Merger Agreement") to sell Vectren to CenterPoint.  Pursuant to the terms of the Merger Agreement, Vectren stockholders will receive $72.00 in cash for each share of Vectren common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $6 billion.

3.      On June 18, 2018, Vectren filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.  The Proxy Statement, which recommends that Vectren stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Vectren's financial projections, relied upon by Vectren's financial advisor Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch") in its financial analyses; (ii) the valuation analyses prepared by BofA Merill Lynch in connection with the rendering of its fairness opinion; and (iii) the background process leading to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as Vectren stockholders need such information to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, Vectren's public stockholders will be forced to make a

voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Vectren is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Vectren.

9.      Vectren is an Indiana corporation and maintains its principal executive offices at One Vectren Square, Evansville, Indiana 47708.  Vectren is an energy holding company for Vectren Utility Holdings, Inc. ("VUHI") which serves as the intermediate holding company for three public utilities: Indiana Gas Company, Inc. ("Indiana Gas"), Southern Indiana Gas and Electric Company ("SIGECO"), and Vectren Energy Delivery of Ohio, Inc. ("VEDO").  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "VVC."

10.      Defendant Carl L. Chapman ("Chapman") has been President and Chief Executive Officer ("CEO") of the Company since June 2010, Chairman of the Board since May 2011 and a director of the Company since 2009.

11.      Defendant Derrick Burks ("Burks") has been a director of Vectren since October 2017.

12.      Defendant James H. DeGraffenreidt, Jr. ("DeGraffenreidt") has been a director of Vectren since 2010.

13.      Defendant John D. Engelbrecht ("Engelbrecht") has been a director of Vectren since 2000.

14.      Defendant Anton H. George ("George") has been a director of Vectren since 2000.

15.      Defendant Robert G. Jones ("Jones") has been a director of Vectren since 2011.

16.      Defendant Patrick K. Mullen ("Mullen") has been a director of Vectren since 2014.

17.     Defendant R. Daniel Sadlier ("Sadlier") has been a director of Vectren since 2003.

18.     Defendant Michael L. Smith ("Smith") has been a director of Vectren since 2006.

19.     Defendant Teresa J. Tanner ("Tanner") has been a director of Vectren since 2015.

20.     Defendant Jean L. Wojtowicz ("Wojtowicz") has been a director of Vectren since 2000 and Lead Director of Vectren since 2016.

21.     Defendants referenced in paragraphs 10 to 20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     CenterPoint is a Texas corporation with its principal executive offices located at 1111 Louisiana, Houston, Texas, 77002.  It is a domestic energy delivery company that includes electric transmission and distribution, natural gas distribution and energy services operations.  CenterPoint's common stock is traded on the New York Stock Exchange and the Chicago Stock Exchange under the ticker symbol "CNP."

23.     Merger Sub is an Indiana corporation and a wholly-owned subsidiary of CenterPoint.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Vectren common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families,

legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

26.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of April 20, 2018, there were approximately 83,080,695 shares of Company common stock outstanding.  All members of the Class may be identified from records maintained by Vectren or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

27.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

28.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

Plaintiff has retained competent counsel experienced in litigation of this nature.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

30.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.   Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

31.     Evansville, IN-based Vectren is an energy holding company that was incorporated in 1999.   The Company's wholly owned subsidiary, VUHI, serves as the intermediate holding company for three public utilities: Indiana Gas, SIGECO and VEDO, which together provide gas and/or electricity to more than 1 million customers in adjoining service territories that cover nearly two-thirds of Indiana and approximately 20 percent of Ohio.   Indiana Gas provides energy delivery services to approximately 592,400 natural gas customers in central and southern Indiana.     SIGECO provides energy delivery services to approximately 145,200 electric customers and 111,500 gas customers in southwestern Indiana.   VEDO provides energy delivery services to approximately 318,100 natural gas customers in west-central Ohio.   VUHI also has other assets that provide information technology and other services to the three utilities (collectively with Indiana Gas, SIGECO and VEDO, the "Utility Group").

32.     Vectren's non-utility subsidiaries and affiliates offer energy related products and services to customers throughout the U.S.   The Company, through Vectren Enterprises Inc., is

7

involved in non-utility activities in two primary business areas: Infrastructure Services and Energy Services (collectively, the "Nonutility Group"). Infrastructure Services provides underground pipeline construction and repair services. Energy Services provides energy performance contracting and sustainable infrastructure, such as renewables, distributed generation, and combined heat and power projects. At December 31, 2017, the Company had $6.2 billion in total assets, with $5.5 billion attributed to the Utility Group, and $0.7 billion attributed to the Nonutility Group.

33. On February 20, 2018, Vectren reported its fourth quarter and full year 2017 financial results. The Company hit its targeted earnings guidance, reporting net income of $216.0 million for the year, compared to $211.6 million in 2016. Consolidated net income for the quarter was $61.2 million, or $0.74 per share, compared to $69.6 million, or $0.84 per share, in the fourth quarter of 2016. Defendant Chapman highlighted the Company's financial success, stating:

> Results for 2017 were on plan at $2.60 per share, reflecting yet another year of earnings growth. The Utility Group performed as expected, largely driven by our continued investment in gas infrastructure programs. . . . Infrastructure Services and Energy Services also performed very well this year, each with record annual revenues.

> * * *

> Vectren's successful execution of key strategic initiatives, including our ability to deliver consistent earnings growth over the past several years of 7 percent, has positioned us very strongly as we look out over the next five to ten years. . . . Our continued investment in gas infrastructure and an accelerating investment in our electric system, along with a strong nonutility portfolio, give us confidence in our ability to continue to achieve strong results.

34.     Vectren's financial performance and growth prospects remained strong through the first quarter of 2018.  The Company affirmed its 2018 earnings guidance of $2.80 to $2.90 per share in the Company's May 1, 2018 press release announcing its first quarter of 2018 financial results.  Vectren reported net income of $63.5 million, or $0.76 per share, compared to net income of $55.4 million, or $0.67 per share, in the first quarter of 2017.  Utility Group earnings were $74.3 million, or $0.89 per share, compared to $65.9 million, or $0.80 per share, in the first quarter of 2017.  Defendant Chapman commented favorably on the quarter's financial results, noting, "[o]ur first quarter results are on track to meet our expectations for the year. . . . Our Utility Group results reflect the on-going investment in our gas infrastructure programs in both Indiana and Ohio that continue to drive growth for the business."

**The Sale Process**

35.     In connection with Vectren's ongoing strategic review, the Company regularly evaluates and revises its stand-alone strategic plan.  According to the Proxy Statement, "Company management believes that the Company's current strategic plan is capable of delivering 6% to 8% growth in the Company's earnings per share over the next several years." Proxy Statement at 16.

36.     However, Vectren has also considered several potential acquisitions and three potential "merger of equals" transactions in the past several years, including with a utility company referred to in the Proxy Statement as "Bidder A."

37.     From January 26 to January 31, 2018, the Company entered into confidentiality and standstill agreements with five counterparties, including CenterPoint and Bidder A, and

parties referred to in the Proxy Statement as "Bidder B," "Bidder C" and "Bidder D." On February 6, 2018, the Company also entered into a confidentiality and standstill agreement with a utility company referred to in the Proxy Statement as "Bidder E." However, the Proxy Statement fails to indicate whether these confidentiality and standstill agreements include "don't-ask-don't-waive" ("DADW") provisions that are currently precluding any of these parties from submitting a topping bid for the Company.

38. On February 21, 2018, CenterPoint proposed an all cash transaction at a price of $70.00 per share. Bidder A proposed a price of $72.50 per share with up to 83% of the consideration in cash and the remainder in Bidder A common stock. Bidder B indicated an all cash price range of $73.00 to $75.00 per share. Bidder D indicated a price range of $65.00 to $70.00 per share with the consideration being a combination of cash and stock, but did not specify the allocation between cash and stock.

39. Following discussions between the parties and their advisors, on April 16, 2018, CenterPoint submitted an offer of $71.50 per share in cash and Bidder A submitted an offer of $71.00 per share with 83% of the consideration in cash and 17% in Bidder A common stock.

40. On April 18, 2018, CenterPoint indicated it would offer $72.00 per share. The Company then determined to move forward on a transaction with CenterPoint.

41. Over the next few days, the parties finalized the terms of the Merger Agreement.

42. At an April 21, 2018 Board meeting, BofA Merrill Lynch rendered its fairness opinion and the Board approved the Merger Agreement. Following the meeting, Vectren and CenterPoint executed the Merger Agreement.

**The Proposed Transaction**

43.    On April 23, 2018, Vectren and CenterPoint issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

> HOUSTON and EVANSVILLE, Ind., April 23, 2018 -- CenterPoint Energy, Inc. (NYSE: CNP) and Vectren Corporation (NYSE: VVC) today announced they have entered into a definitive merger agreement to form a leading energy delivery, infrastructure and services company serving more than 7 million customers across the United States.
>
> Under the terms of the agreement, which have been unanimously approved by both CenterPoint Energy's and Vectren's Boards of Directors, Vectren shareholders will receive $72.00 in cash for each share of Vectren common stock. CenterPoint Energy will also assume all outstanding Vectren net debt.
>
> "This merger represents a significant step toward our vision to lead the nation in delivering energy, service and value. By combining our two highly complementary companies, we are creating an energy delivery, infrastructure and services leader that will drive value for our shareholders and customers, while enhancing growth opportunities for our businesses," said Scott M. Prochazka, president and chief executive officer of CenterPoint Energy. "From the evolution of customer expectations to the development of innovative technologies, this is a time of extraordinary opportunity for our industry. As a combined company, we will continue to focus on a future that benefits our customers, employees, communities and shareholders."
>
> Vectren Chairman, President and Chief Executive Officer Carl L. Chapman said, "With CenterPoint Energy, we've found the right partner to begin the next chapter for Vectren and our family of companies. They share the same core values and dedication to the communities they serve, which is evidenced by the commitments they have made to our employees, philanthropic outreach, and Evansville, Ind., our home, where CenterPoint Energy will locate the newly combined company's natural gas utility operations headquarters. Together, we will be a stronger, more competitive company that will be well-positioned to continue to provide value for our stakeholders in the years to come."
>
> **The Combined Company**

The combined company is expected to have electric and natural gas delivery operations in eight states with assets totaling $29 billion and an enterprise value of $27 billion.

Headquartered in Houston, CenterPoint Energy has significant natural gas operations in Arkansas, Louisiana, Minnesota, Mississippi, Oklahoma and Texas, serving more than 3.4 million customers. The company also delivers electricity to more than 2.4 million customers in the greater Houston area. CenterPoint Energy's competitive natural gas sales and services business serves more than 100,000 customers in 33 states. The company employs nearly 8,000.

Headquartered in Evansville, Ind., Vectren provides natural gas to more than 1 million customers in Indiana and Ohio, and electricity to 145,000 customers in Indiana. Vectren's non-utility businesses include Infrastructure Services (VISCO), which provides underground pipeline construction, repair and replacement services, and Energy Services (VESCO), which offers performance contracting services and renewable energy project development. CenterPoint Energy intends to continue operating VISCO out of Indianapolis, Ind., and VESCO out of Newburgh, Ind. (near Evansville). Vectren also owns and operates power generation assets in Indiana with a production capacity of 1,248 megawatts. The company employs approximately 5,500.

Following the completion of the merger, the combined company expects to execute a unified business strategy focused on the safe and reliable delivery of electricity, natural gas and related services to customers.

* * *

**Leadership**

At the closing of the transaction, Scott M. Prochazka will serve as president and CEO of the combined company. The full executive team for the combined company will be announced prior to or in conjunction with the closing of the merger. The natural gas utilities operations of the combined company, as well as that businesses' lead executive, will be headquartered in Evansville. Additionally, CenterPoint Energy will establish a chief business officer for Vectren's electric business who will directly report to CenterPoint Energy's CEO and spearhead southwestern Indiana's electric grid modernization and generation transition initiatives recently underway. In addition to utility field employees, CenterPoint Energy will retain key operational activities in support of the utilities in Evansville.

Integration teams co-led by leaders from each company are in the process of being established and will be centered in Evansville. These teams will be responsible for identifying best practices and facilitating the integration of the two companies.

**Insiders' Interests in the Proposed Transaction**

44.     CenterPoint and Vectren insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Vectren.

45.     Vectren insiders stand to reap substantial financial benefits for securing the deal with CenterPoint. Pursuant to the Merger Agreement, all Company equity awards, other than stock units granted in May 2018 or the 2019 fiscal year, will vest in full and be cancelled and exchanged for a cash payment in an amount equal to the Merger Consideration *plus* the amount of any unpaid dividend equivalents associated with such stock units as of the effective time of the Proposed Transaction, less withholding with respect to applicable taxes.

46.     Moreover, if they are terminated in connection with the Proposed Transaction, Vectren's named executive officers are set to receive substantial cash payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash (Double Trigger) (1) | Cash (Single Trigger) (2) | Equity (3) | Perquisites / Benefits (4) | Subtotal | Non-qualified Deferred Compensation (5) | Total | CIC Reduction (6) |
|---|---|---|---|---|---|---|---|---|
| Carl L. Chapman | $6,331,500 | $ 496,718 | $10,890,705 | $ 33,016 | $17,751,938 | $ 13,884,901 | $31,636,839 | $ 2,500,046 |
| M. Susan Hardwick | $1,416,301 | $ 125,345 | $ 2,396,956 | $ 11,156 | $ 3,949,758 | $ 1,538,138 | $ 5,487,896 | $ 748,398 |
| Eric J. Schach | $1,928,925 | $ 178,437 | $ 3,349,641 | $ 30,343 | $ 5,487,346 | $ 825,248 | $ 6,312,594 | N/A |
| Ronald E. Christian | $1,599,071 | $ 141,520 | $ 2,475,168 | $ 19,682 | $ 4,235,441 | $ 759,701 | $ 4,995,142 | N/A |

**The Proxy Statement Contains Material Misstatements or Omissions**

47. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Vectren's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

48. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Vectren's financial projections, relied upon by Vectren's financial advisor, BofA Merrill Lynch, in its financial analyses; (ii) the valuation analyses prepared by BofA Merrill Lynch in connection with the rendering of its fairness opinion; and (iii) the background process leading to the Proposed Transaction. Accordingly, Vectren stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Vectren's Financial Projections***

49. The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

50. The Proxy Statement omits material information regarding Vectren management's financial projections, including material information relied upon by the Company's financial advisor BofA Merrill Lynch.

51. For example, in connection with BofA Merrill Lynch's *Discounted Cash Flow Analysis* ("DCF"), the Proxy Statement sets forth:

> BofA Merrill Lynch performed a discounted cash flow sum-of-the-parts analysis of the Company to calculate the estimated present value of the standalone

14

unlevered, after-tax free cash flows that the Company was forecasted to generate during our fiscal years 2018 through 2027 based on our management forecasts. BofA Merrill Lynch calculated terminal values for each Company business segment by applying terminal forward multiples of (i) 17.5x to 19.5x to our fiscal year 2027 estimated EPS for our gas utility business, (ii) 15.3x to 17.3x to our fiscal year 2027 estimated EPS for our electric utility business and (iii) 8.0x to 9.0x to our fiscal year 2027 estimated EBITDA for our non-regulated business. The cash flows and terminal values for each business segment were then discounted to present value as of December 31, 2017 using discount rates ranging from (i) 5.0% to 5.8% for our gas utility business, (ii) 4.7% to 5.4% for our electric utility business and (iii) 7.8% to 9.6% for our non-regulated business, based on estimates of each business segment's weighted average cost of capital.

Proxy Statement at 37. The Proxy Statement fails, however, to disclose the Company's unlevered, after-tax free cash flows ("UFCFs"), including the UFCFs for each of the Company's gas utility, electric utility and non-regulated businesses that formed the basis of BofA Merrill Lynch's sum-of-the-parts DCF, as well as the Company's definition of UFCF and the underlying projection line items. The Proxy Statement similarly fails to disclose the Company's fiscal 2027 estimated EPS for its gas utility and electric utility businesses and the fiscal 2027 estimated EBITDA for its non-regulated business, each utilized by BofA Merrill Lynch to derive the terminal value of Vectren's respective business segments in its DCF.

52. Further, the Proxy Statement fails to disclose the Company's fiscal 2018-2027 estimated EPS, including the estimated EPS for the Company's non-regulated business, as well as the fiscal 2018-2027 estimated EBITDA for the Company's gas utility and electric utility businesses.

53. The omission of this information renders the statements in the "Forward-Looking Financial Information" and "Opinion of the Company's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

15

*Material Omissions Concerning BofA Merrill Lynch's Financial Analyses*

54.      The Proxy Statement describes BofA Merrill Lynch's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of BofA Merrill Lynch's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Vectren's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA Merrill Lynch's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Vectren's stockholders.

55.      With respect to BofA Merrill Lynch's sum-of-the-parts DCF, in addition to the key fiscal year 2018-2027 UFCF and fiscal year 2027 EPS and EBITDA projections for the Company's respective business segments set forth above, the Proxy Statement fails to disclose: (i) a quantification of the inputs and the assumptions underlying the respective discount rates used in the analysis; (ii) the net debt as of December 31, 2017 for each of the Company's business segments utilized by BofA Merrill Lynch in this analysis; and (iii) the implied perpetuity growth rates resulting from the analysis.

56.      With respect to BofA Merrill Lynch's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected comparable companies observed by BofA Merrill Lynch in the analysis; and (ii) the calendar year 2018 and 2019 estimated EPS and EBITDA for each of the Company's gas utility, electric utility and non-regulated businesses, utilized by BofA Merrill Lynch in this

analysis.

57.     With respect to BofA Merrill Lynch's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose (i) the individual multiples and financial metrics for each of the selected transactions analyzed by BofA Merrill Lynch in the analysis; and (ii) the calendar year 2018 and 2019 estimated EPS for each of the Company's gas utility and electric utility businesses and the calendar year 2018 and 2019 estimated EBITDA for the Company's non-regulated business, utilized by BofA Merrill Lynch in this analysis.

58.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

59.     The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor" and "Forward-Looking Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

60.     The Proxy Statement also omits material information relating to the background process leading up to the Proposed Transaction.

61.     The Proxy Statement sets forth that: "[f]rom January 26, 2018 to January 31, 2018, the Company entered into confidentiality and standstill agreements with five of the six counterparties that had indicated an interest in pursuing a transaction with the Company, including CenterPoint Energy and Bidder A." Proxy Statement at 19. The Proxy Statement further sets forth that Bidder E executed a "substantially similar" confidentiality and standstill

agreement with the Company on February 6, 2018. *Id.*

62. Critically, the Proxy Statement fails to indicate whether the confidentiality and standstill agreements the Company entered into with these potential buyers are still in effect and/or contain DADW standstill provisions that are presently precluding these potential buyers from making a topping bid for the Company.

63. The disclosure of the terms of the standstill provisions in the confidentiality agreements Vectren entered into with potential buyers is crucial to Vectren stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

64. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

65. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act
And SEC Rule 14a-9 Promulgated Thereunder**

66.     Plaintiff repeats all previous allegations as if set forth in full.

67.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

68.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  The Proxy Statement misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company, the financial analyses performed by the Company's financial advisors, and the background process leading to the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

69.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy

Statement and in other information reasonably available to stockholders.

70.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

71.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

72.     Plaintiff repeats all previous allegations as if set forth in full.

73.     The Individual Defendants acted as controlling persons of Vectren within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Vectren and participation in or awareness of the Company's operations or intimate knowledge of the statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

74.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

75.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

76.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

77.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

78.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Vectren, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Vectren stockholders;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 10th, 2018

*/s/ Eric S. Pavlack*
Eric S. Pavlack
PAVLACK LAW, LLC
9011 North Meridian Street, Suite 203
Indianapolis, IN 46260
Tel: (317) 251-1100
Fax: (317) 252-0352
Eric@PavlackLawFirm.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036

Tel: (212) 682-3025
Fax: (212) 682-3010

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com